Corradini v. Corradi USA May it please the court. My name is David Fine. I represent Corradi USA in this matter. I'd like to begin with some of the issues that your honors raised when my, I thought you might like that, your honor, to use Judge Wilson's phrase that opposite counsel discussed with you. The first thing is, Judge Wilson, I think you're entirely correct that if there was no money in the account, whatever happened here was not a payment by Corradi Italy. Corradi Italy had no money. The only way you could get to the idea that Corradi Italy made the payment is if you concluded that being in debt to BNL is sufficient to say that it made the payment. But there are no cases that say that. My opponent has offered none, we have seen none, and I would submit that there are none. It had to actually make the payment. Now, Judge Haynes, you asked a couple of questions that I'd like to address. One was what I think is a fairly obvious question. Why isn't BNL here? From our perspective, we were confronted with a lawsuit that asked us to pay money for a debt that we didn't know. So we took it at face value and instead of trying to interplead BNL, we took the case as it was and we defended it as it was. Add to that, and I will acknowledge that this is not of record, so I hope you'll forgive me, but with that codicil, BNL has made it fairly clear to us through the course of the litigation that it doesn't want to be involved in litigation in the United States. And there's probably a pretty good question about personal jurisdiction. So that's why we fought the fight that was presented to us on the turf on which it was presented. The other issue, Judge Haynes, that you raised that I'd like to address is that issue of timing. Because I think that gets to a really important point. This might be a very different case if Karate Italy, or its trustee, I'll use the short form, Karate Italy, had come to the district court and pleaded that it had paid back to BNL all of that $800,000 and if it had made a claim under the Texas statute 5.117B because that provision addresses just this sort of scenario where the applicant for a letter of credit seeks reimbursement, I'm sorry, where the issuer of a letter of credit seeks reimbursement from the applicant for having paid out an amount. The problem is they never pleaded that claim and they never proved it. So why do you all get the benefit of 54C and they don't? Why do we get the benefit of 54C? On the attorney's fees. The attorney's fees are statutory. They don't get it on the $115,000. All right. Well, Your Honor, first of all, our entitlement to fees is as a prevailing party under the Texas statute, the statutory subrogation provision. The reason they don't get it for the $115,000 is number one, they didn't receive it. Number two, they never properly pleaded it. They never pleaded a claim under subsection B, 5.117B, which is the only claim in the case for which that $115,000 would matter. And the first time they ever mentioned the $115,000 was in responding to our summary judgment motion. They never included it in any iteration of their complaint. They never included it in initial disclosures. They never told the court about that. It was sort of a Hail Mary at the tail end because I think they recognized that it didn't really pass the logic test to say that Karate Italy had made payments when it hadn't. So they said, well, by the way, we think there's $115,000. But we didn't have the opportunity to take discovery into that. The only evidence that they offer is Dr. Solferini in a declaration post-discovery saying that they paid $115,000. Well, that's too late. That's not how we do things. You plead it, you allow us the chance... ...saying the 54C entitlement doesn't apply because they're not entitled to show up after discovery's over and start claiming stuff that's floating around that they don't have evidence of. I think that's exactly right. Okay, but let's assume, Arguendo, then, that we were to affirm and then the bankruptcy shut down tomorrow, but in the bankruptcy book it made clear that BNL was paid $115,000 for this $800. Would Bank of Italy be able to... I'm sorry, Karate Italy be able to sue you all or would you be able to then claim res judicata so they can never get this $115,000? I think that's an interesting question. I'm not entirely sure what the answer is. I do think that there are some res judicata implications, but if there's a problem there with res judicata, it's of Karate Italy's own making. All they had to do was go to the district judge and say, we would appreciate leave to amend to be freely granted under Foeman against Davis and we'd like to plead that, yes, we've now made this payment and be subjected to discovery so that we could look into it. And I'll note, and I don't want to run down the rabbit hole, if you will, on this, but we would not take on faith what Dr. Solferini says in the declaration because he's the same fellow who, at the beginning of the case, and this is off record, at the beginning of the case gave us the bank statement but redacted out the part that said that it was at a negative balance. So his credibility is not a shining example of veracity, shall we say. So, yes, is it possible that if they brought another lawsuit that our response would be res judicata? It is possible, but that's not our fault. But if B&L sued you all, so let's say we affirm B&L sues you tomorrow, wouldn't you claim credit for that $115,000? You'd say we only owe $685,000, whatever the math is? I think we would probably take third-party discovery of Karate Italy to find out what really happened, or of B&L, right, because B&L allegedly paid it. Okay, but let's say it's true that the $115,000 was paid. B&L shouldn't recover a full $800,000 from you, and so wouldn't you guys claim that? So then you really would get the windfall of the $115,000. What I don't understand is you all say you owe the money, but you don't want to pay it. You're not willing to pay anybody. You're not willing to pay B&L. You're not paying these guys, and we're sitting here having this litigation about money that's owed instead of the money being paid. Your Honor, the answer to your inquiry is that it rests respectfully on a false presumption, which is that my client doesn't want to pay. As is in the record, we have had discussions with B&L. Now, it's been sort of put on hold because of this litigation because we didn't want to be sort of double-charged, but my client has had discussions with B&L about paying back B&L. So Karate USA has never taken the position that it should sort of get the benefit of, you know, throw these two cats in a bag and let them fight, and we get to walk away with $800,000. That's never been my client's position. My client's position is it doesn't want to pay somebody who didn't pay it out in the first place and then have B&L come in and say, by the way, we actually paid it, so now pay it again. So you end up paying... If we pay B&L $685,000 because they already got $115,000, are you going to pay that $115,000 to Bank of Italy if we were to affirm? Your Honor, I don't know the answer to that because I don't know what the circumstances are. You don't know the answer? No. That just doesn't make any sense to me. Well, if it is $115,000, again, that's, as they say in trial courts, facts not in evidence. But if I could sort of back the truck up just a little bit to that question of payment. Who made the payment here? Because I do agree with my friend across the aisle that that's the critical question. And the answer to that is that B&L made the payment. And Judge Wilson made, I think, sort of the critical point, which was there was no money in Prati Italy's account. And you can see that if you actually look at the bank statement that's been so much discussed in the case, which is in the record at page 515. The account has only debits. It has no credits. Their theory seems to be somehow that B&L poured $800,000 into the account and then Prati Italy sent it back out. But that never happened. The only thing that's reflected on here is the overdraft, the negative balance increased by $800,000. So it's just in the red more than it had been. And that's not a payment, even by the definition that they offered to the district court, which interestingly they don't offer in this court, from Black's Law Dictionary. A payment is taking something over which you've had dominion or control and sending it to somebody else. Well, they never had dominion or control over $800,000 that was sent to Bank of the West. And the reason for that, well, let's go back and sort of look at the framework of this case and not forget where it all started. It all began with a letter of credit. And it was a letter of credit in which the issuer was B&L, the applicant was Prati Italy, and the beneficiary was Bank of the West. There was a legal obligation, a contractual obligation between B&L and Bank of the West that if certain conditions were not met or certain contingencies arose, then B&L would pay Bank of the West. That was the legal obligation. One of those obligations arose and B&L made that payment to Bank of the West. There was never a legal obligation on the part of Prati Italy for it to pay Bank of the West anything. My opponents never pointed any, and there isn't any, because that's not how letters of credit work. Letters of credit are between financial institutions to secure loans and things along those lines. And that's exactly what happened here. That also, by the way, creates another problem for my opponent, which is that to get subrogation, it's got to be an involuntary payment. If somehow Prati Italy had made a payment directly to Bank of the West, it wasn't pursuant to any legal obligation, as I've just said, because this whole thing gets down to the letter of credit. And so it would have been a voluntary transfer. So it wouldn't be the subject of, the proper subject, of a claim for subrogation. But the bottom line is, we know that there wasn't a payment from Prati Italy because it didn't have the money. And indeed, at points, my opponent acknowledges that because he says there was an overdraft. There was money owed. We owe more money. Well, let's stipulate to them. They owe more money. But that doesn't get them where they need to go with respect to any of the causes of action that they've raised. We have said to this court, as we said to the district court, all of them require proof of actual payment. You have to be out of pocket. And they haven't been. And they've offered you no authority that says that on any of their causes of action, they can succeed without actually having made that payment. And the last thing that I'll note on the issue of payment is the issue of collateral estoppel, which we address in our briefs. The district judge did not reach it, but he didn't need to, of course, because this court can always affirm on any basis present in the record, particularly one that was offered to the district court. And on the collateral estoppel front, we have a situation in which BNL said to the bankruptcy court in Italy, a competent court, competent jurisdiction, we paid $800,000, or 650 euros, or whatever it would be now with the exchange rate, and we should be able to make a claim against the bankruptcy estate of Prati Italy. Prati Italy was present in the suit. It had an opportunity to oppose that. It did oppose it, not on the merits, but only saying something about the timing of whether it was pre-petition obligation or post-petition obligation. And the Italian bankruptcy court said, BNL, you're right, you made the payment, and therefore you have a claim against the Prati Italy estate. And Prati Italy is a stop from opposing that. Therefore, the district court was correct on the merits of the suit. The district court was also correct on the issue of attorney's fees. And I'll address just two points very quickly on that issue, and of course be very eager to address any questions that the court has. There were really only two defenses that my opponent offered on the attorney fee issue. Well, three. One was we shouldn't have prevailed. Obviously, we think that isn't the case, and if the court agrees with us on the merits, then they do not delve into that particular defense on the attorney's fees. The second thing was this argument that somehow we waived the ability to raise attorney's fees. And the answer to that is that under Engel v. Teleprompter, this court's authority, you don't waive a request for attorney's fees as long as it was made early enough in the case for the other side to have a heads up, if you will, and as long as there's no question that attorney's fees are available. Here, it is true that we did not raise the attorney's fee issue in our answer. However, we did in our initial disclosure mere weeks after filing the answer. So they knew that attorney's fees were issued. And there can be no question but that attorney's fees are available because the statute, the statutory subrogation statute in Texas, allows the prevailing party to recover attorney's fees. Indeed, they made a claim for attorney's fees under that provision, so they would be very hard pressed to deny the availability. So there was no waiver, and the district court was correct and did not abuse its discretion in determining that there was no waiver. The only other issue that they raised is this suggestion that under Tony Gullo, the Texas authority, that my client did not properly segregate out work that was compensable from work that was non-compensable. And the answer to that is that Tony Gullo also says that there's an exception to that. And the exception is if the same work serves to prove or defend against issues that are compensable and issues that are non-compensable, then you can collect on that amount. And in this circumstance, as your honors can see from this argument and from the briefs, the big issue was who made the payment. And that crosses all the lines, the statutory claim and all of the common law claims. And so that's a common issue. Now, are there some small and discrete issues on which there's not that overlap? There were. And that's why we said to the district judge, we think it would be fair for you to discount the fees to take that into account, and he did just that. So there's no problem with segregation. We believe, your honors, that the court should affirm on the merits determination and the court should affirm on the fee determination  whether there should be an additional award of fees related to this appeal, because they would likewise be available under the statute. Are there any other questions, your honors, that you have for me before I take questions? I think we have your argument. Thank you very much. Thank you, your honor. All right. We'll hear rebuttal from Mr. Wood. Thank you, your honor. I'll try to touch on some of the highlights from Mr. Fine. First of all, with respect to the argument that there was never any obligation for Karate Italy to pay anything, that's absolutely not the case. The letter of credit itself, which was signed by Karate Italy when it applied for the letter of credit, specifically says, this is at the record 314, the client, Karate Italy, authorizes the bank, BNL, to withdraw amounts, including overdrawn amounts from its current account, which is the 3045 account, for an amount equal to the exposure resulting from the issuance of the standby letter of credit, which is the letter of credit we're talking about here, and that's exactly what happened. In terms of timing, we know that it wasn't a credit to its account after the fact, but rather that money was put in the account and transferred before. How do we know that? Well, we know it from both BNL's records and Bank of the West's records. Again, Bank of the West is the recipient of this money, and when you look at Bank of the West's bank records, it shows that that transfer came from the 3045 account in the name of Karate Italy. That means that the debit to the account happened first, and then the money was transferred to Bank of the West, not the other way around. If it was the other way around, Bank of the West's records would not reflect that that money came from the 3045. It would have reflected that that money came from some other account with another number in the name of BNL, but that's not what the records reflect, so the timing of this is key. With respect to the collateral estoppel argument, first of all, it was never even argued in the bankruptcy court as to who made the payment, who didn't make the payment, so the bankruptcy court never made a ruling on that, but the rulings that were made are consistent with the positions that the parties are taking here. Again, BNL submitted a proof of claim based on the overdrawn amounts from this account. Dr. Solferini initially objected to that claim because he hadn't seen all the records yet. When he was provided with, and the court was provided with the records, including the one I just read to you, the bankruptcy court said, well, yes, they did have the right to overdraw on that account because there was a prior document that allowed that to happen, and therefore the bankruptcy court allowed the proof of claim. So everything that happened in the bankruptcy court, to the extent even is relevant here, is entirely consistent with the positions Dr. Solferini is arguing here. Counsel, it's entirely consistent with the idea that BNL actually paid Bank of the West the $800,000. That's not what it argued, and that's not what the Italian court found, I don't believe. What it said was it loaned that money to Karate Italy, and that's why it's asserting a claim against Karate Italy in that case. Well, it paid the money to Bank of the West on behalf of Karate Italy based on the letter of credit, though, right? It deposited the money into Karate Italy's account and then to transfer the money from that account to Bank of the West. That's the order of how things... Per the letter of credit, though. In other words, BNL wasn't giving Karate Italy income that Karate Italy would otherwise have or any other funding that Karate Italy would otherwise have. BNL was complying with its obligations under the letter of credit in favor of Bank of the West, right? Correct, and it was also complying with its obligations under its line of credit with Karate Italy. So they were working in tandem. If just the letter of credit was at issue here, this would be a very simple case, but it wasn't. There were these separate agreements and this separate line of credit which protected BNL in this case, so that we're not talking just about the letter of credit. And again, it gave them the right because of the... Well, but, you know, as I understand letters of credit, I've had a little bit of experience with this in law practice. I mean, of course the bank, BNL, who is the issuer of the letter of credit, is not going to just give the money. I mean, they're going to look back to whomever is the applicant, I guess, which would be Karate Italy in this case, to pay them back if the letter of credit's called, right? They could. But that doesn't mean that Karate Italy made the payment. But in this particular instance, they had the unfettered right to demand that money under the line of credit, which is exactly what happened here. They had a million-dollar line of credit for the specific purpose of that. Let's say, as a hypothetical, Karate Italy used this line of credit and had that money deposited in its account and took it out in cash and then handed it over to Bank of the West. Would there be any dispute that it would have a subrogation right? Well, this is no different. The only difference is that this was an electronic transaction instead of a cash transaction. The fact of the matter is, under the line of credit, Karate Italy had the unfettered right to demand that money, and then that money could be transferred over to Bank of the West, and it now has an equitable right to seek reimbursement of that money. I see that I'm out of time. If I'm answering any of the questions, if you have any. Thank you very much. We have y'all's argument, and we appreciate it very much. The case is under submission, and we will take a five-minute break and return for the panel. Thank you.